# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| DEMETRICE BELL-O'NEAL | * | |
| on behalf of A.O., a minor child, | * | No. 13-835V |
| | * | |
| Petitioner, | * | Special Master Christian J. Moran |
| | * | |
| v. | * | Filed: November 30, 2015 |
| | * | |
| SECRETARY OF HEALTH | * | Stipulation; influenza ("Flu") vaccine; |
| AND HUMAN SERVICES, | * | Guillain-Barré syndrome ("GBS"). |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * *

Diana L. Stadelnikas Sedar, Maglio, Christopher & Toale, PA, Sarasota, FL, for Petitioner;
Claudia B. Gangi, United States Dep't of Justice, Washington, DC, for Respondent.

### UNPUBLISHED DECISION[1]

On November 20, 2015, respondent filed a joint stipulation concerning the petition for compensation filed by Demetrice Bell-O'Neal, on behalf of her daughter, A.O., on October 25, 2013. In her petition, Ms. Bell-O'Neal alleged that the influenza ("flu") vaccine which A.O. received on January 11, 2012, which is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. §100.3(a), caused A.O. to suffer Guillain-Barré Syndrome ("GBS"). Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of A.O. as a result of her condition.

Respondent denies that the Flu vaccine caused A.O. to suffer GBS or any other injury or her current condition.

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the party has 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Nevertheless, the parties agree to the joint stipulation, attached hereto as "Appendix A." The undersigned finds said stipulation reasonable and adopts it as the decision of the Court in awarding damages, on the terms set forth therein.

Damages awarded in that stipulation include:

a. **A lump sum of $810,427.27, which amount represents compensation for first year life care expenses ($153,594.84), lost future earnings ($406,832.43), and pain and suffering ($250,000.00), in the form of a check payable to petitioner as guardian/conservator of the estate of A.O. for the benefit of A.O. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian/conservator of A.O.'s estate;**

b. **A lump sum of $8,772.26, which amount represents reimbursement of a lien for services rendered on behalf of A.O., in the form of a check payable jointly to petitioner and**

   **Georgia Department of Community Health**
   **900 Circle 75 parkway**
   **Suite 650**
   **Atlanta, GA 30339**
   **Case No: 156901/0000233137**

   **Petitioner agrees to endorse this payment to the State of Georgia.**

c. **A lump sum of $24,595.20, which amount represents reimbursement of a lien for services rendered on behalf of A.O., in the form of a check payable jointly to petitioner and**

   **Peach State Health Plan**
   **5615 High Point Drive, Suite 100**
   **Attn: Case Management Dept.**
   **Irving, Texas 75038**
   **Recipient ID: GA01111989738884**

   **Petitioner agrees to endorse this payment to Peach State Health Plan.**

    **d. An amount sufficient to purchase the annuity contract described in paragraph 10 of the stipulation attached hereto as "Appendix A," paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").**[2]

In the absence of a motion for review filed pursuant to RCFC, Appendix B, the clerk is directed to enter judgment in case 13-835V according to this decision and the attached stipulation.[3]

Any questions may be directed to my law clerk, Dan Hoffman, at (202) 357-6360.

    **IT IS SO ORDERED.**

                                                                                     s/ Christian J. Moran
                                                                                   Christian J. Moran
                                                                                   Special Master

---

[2] The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve.  The Life Insurance Company must have one of the following ratings from two of the following rating organizations:
    a. A.M. Best Company:  A++, A+, A+g, A+p, A+r, or A+s;
    b. Moody's Investor Service Claims Paying Rating:  Aa3, Aa2, Aa1, or Aaa;
    c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating:  AA-, AA, AA+, or AAA;
    d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

[3] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing a notice renouncing the right to seek review by a United States Court of Federal Claims judge.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OFFICE OF SPECIAL MASTERS

DEMETRICE BELL-O'NEAL )
On behalf of A.O., a minor child, )
　)
　　　　　Petitioner, )
v. ) No. 13-835V
　) Special Master Moran
SECRETARY OF HEALTH AND HUMAN )
SERVICES, )
　)
　　　　　Respondent. )
　)

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of her daughter, A.O., petitioner filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to A.O.'s receipt of the influenza ("Flu") vaccine, which vaccine is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. A.O. received her Flu immunization on January 11, 2012.

3. The vaccine was administered within the United States.

4. Petitioner alleges that A.O. suffered Guillain-Barre Syndrome ("GBS") as a result of receiving the Flu vaccine.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of A.O. as a result of her condition.

6. Respondent denies that the Flu vaccine caused A.O. to suffer GBS or any other injury or her current condition.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

a. A lump sum of $810,427.27, which amount represents compensation for first year life care expenses ($153,594.84), lost future earnings ($406,832.43), and pain and suffering ($250,000.00), in the form of a check payable to petitioner as guardian(s)/conservator(s) of the estate of A.O. for the benefit of A.O. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian(s)/conservator(s) of A.O.'s estate;

b. A lump sum of $8,772.26, which amount represents reimbursement of a lien for services rendered on behalf of A.O., in the form of a check payable jointly to petitioner and
Georgia Department of Community Health
900 Circle 75 Parkway
Suite 650
Atlanta, GA 30339
Case No: 156901/0000233137

Petitioner agrees to endorse this payment to the State of Georgia.

c. A lump sum of $24,595.20, which amount represents reimbursement of a lien for services rendered on behalf of A.O., in the form of a check payable jointly to petitioner and
Peach State Health Plan
5615 High Point Drive, Suite 100
Attn: Case Management Dept.
Irving, Texas 75038
Recipient ID: GA011111989738884

Petitioner agrees to endorse this payment to Peach State Health Plan.

2

d. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

    a.    A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

    b.    Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

    c.    Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

    d.    Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of A.O., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioner, as the court-appointed guardian(s)/conservator(s) of the estate of A.O. for the following items of compensation:

a. For future unreimbursable United Healthcare Premium expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,532.00 to be paid up to the anniversary of the date of judgment in year 2023. Then, beginning on the anniversary of the date of judgment in 2023, an annual amount of $2,984.00 to be paid up to the anniversary of the date of judgment in year 2027. Then, beginning on the anniversary of the date of judgment in 2027, an annual amount of $4,008.00 to be paid up to the anniversary of the date of judgment in year 2028. Then, beginning on the anniversary of the date of judgment in 2028, an annual amount of $4,080.00 to be paid up to the anniversary of the date of judgment in year 2029. Then, beginning on the anniversary of the date of judgment in 2029, an annual amount of $4,176.00 to be paid up to the anniversary of the date of judgment in year 2030. Then, beginning on the anniversary of the date of judgment in 2030, an annual amount of $4,332.00 to be paid up to the anniversary of the date of judgment in year 2031. Then, beginning on the anniversary of the date of judgment in 2031, an annual amount of $4,464.00 to be paid up to the anniversary of the date of judgment in year 2032. Then, beginning on the anniversary of the date of judgment in 2032, an annual amount of $4,524.00 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in 2033, an annual amount of $4,620.00 to be paid up to the

anniversary of the date of judgment in year 2034. Then, beginning on the anniversary of the date of judgment in 2034, an annual amount of $4,716.00 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in 2035, an annual amount of $4,776.00 to be paid up to the anniversary of the date of judgment in year 2036. Then, beginning on the anniversary of the date of judgment in 2036, an annual amount of $4,848.00 to be paid up to the anniversary of the date of judgment in year 2037. Then, beginning on the anniversary of the date of judgment in 2037, an annual amount of $4,872.00 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in 2038, an annual amount of $4,908.00 to be paid up to the anniversary of the date of judgment in year 2039. Then, beginning on the anniversary of the date of judgment in 2039, an annual amount of $4,932.00 to be paid up to the anniversary of the date of judgment in year 2040. Then, beginning on the anniversary of the date of judgment in 2040, an annual amount of $4,968.00 to be paid up to the anniversary of the date of judgment in year 2041. Then, beginning on the anniversary of the date of judgment in 2041, an annual amount of $5,028.00 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in 2042, an annual amount of $5,100.00 to be paid up to the anniversary of the date of judgment in year 2043. Then, beginning on the anniversary of the date of judgment in 2043, an annual amount of $5,196.00 to be paid up to the anniversary of the date of judgment in year 2044. Then, beginning on the anniversary of the date of judgment in 2044, an annual amount of $5,280.00 to be paid up to the anniversary of the date of judgment in year 2045. Then, beginning on the anniversary of the date of judgment in 2045, an annual amount of $5,412.00 to be paid up to the anniversary of the date of judgment in year 2046. Then, beginning on the anniversary of the date of judgment in 2046, an annual amount of $5,568.00 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in 2047, an annual amount of $5,760.00 to be paid up to the anniversary of the date of judgment in year 2048. Then, beginning on the anniversary of the date of judgment in 2048, an annual amount of $5,988.00 to be paid up to the anniversary of the date of judgment in year 2049. Then, beginning on the anniversary of the date of judgment in 2049, an annual amount of $6,228.00 to be paid up to the anniversary of the date of judgment in year 2050. Then, beginning on the anniversary of the date of judgment in 2050, an annual amount of $6,516.00 to be paid up to the anniversary of the date of judgment in year 2051. Then, beginning on the anniversary of the date of judgment in 2051, an annual amount of $6,804.00 to be paid up to the anniversary of the date of judgment in year 2052. Then, beginning on the anniversary of the date of judgment in 2052, an annual amount of $7,128.00 to be paid up to the anniversary of the date of judgment in year 2053. Then, beginning on the anniversary of the date of judgment in 2053, an annual amount of $7,440.00 to be paid up to the anniversary of the date of judgment in year 2054. Then, beginning on the anniversary of the date of judgment in 2054, an annual amount of $7,788.00 to be paid up to the anniversary of the date of judgment in year 2055, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

b. For future unreimbursable United Healthcare Maximum-Out-Of-Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,500.00 to be paid up to the anniversary of the date of judgment in year 2055, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

c. For future unreimbursable Medicare Part B Premium and Medigap expenses, beginning on the anniversary of the date of judgment in year 2055, an annual amount of $9,062.52 to be paid up to the anniversary of the date of judgment in year 2067. Thereafter, beginning in year 2067, an annual amount of $3,350.64 to be for the remainder of A.O.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

d. For future unreimbursable Mileage expenses for medical and related appointments, on the first anniversary of the date of judgment, a lump sum of $457.24. Then, on the anniversary of the date of judgment in year 2017, a lump sum of $503.24. Then, on the anniversary of the date of judgment in year 2018, a lump sum of $473.34. Then, on the anniversary of the date of judgment in year 2019, a lump sum of $503.24. Then, on the anniversary of the date of judgment in year 2020, a lump sum of $473.34. Then, on the anniversary of the date of judgment in year 2021, a lump sum of $165.14. Then, beginning on the anniversary of the date of judgment on 2022, an annual amount of $90.47 to be paid up to the anniversary of judgment in year 2024. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $106.57. Then, beginning on the anniversary of the date of judgment on 2025, an annual amount of $90.47 to be paid up to the anniversary of the date of judgment in year 2032. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $106.57. Then, beginning on the anniversary of the date of judgment on 2033, an annual amount of $90.47 to be paid up to the anniversary of the date of judgment in year 2042. Then, on the anniversary of the date of judgment in year 2042, a lump sum of $106.57. Thereafter, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $90.47 to be paid for the remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

e. For future unreimbursable Care Management and Personal Emergency Response System expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,240.00 to be paid up to the anniversary of the date of judgment in year 2024. Then, beginning on the anniversary of the date of the date of judgment on 2024, an annual amount of $2,700.00 to be paid up to the anniversary of the date of judgment in year 2027. Thereafter, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $3,071.40 to be paid for the remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

f. For future unreimbursable Lyrica expenses, beginning on the anniversary of the date of judgment in year 2055, an annual amount of $549.33 to be paid for the remainder of

A.O.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

g. For future unreimbursable Physical Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $12,136.00 to be paid up to the anniversary of the date of judgment in year 2021, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

h. For future unreimbursable Seating Clinic expenses, on the anniversary of the date of judgment in year 2017, a lump sum of $800.00. Then on the anniversary of the date of judgment in year 2019, a lump sum of $800.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

i. For future unreimbursable Camp expenses, beginning on the first anniversary of the date of judgment, an annual amount of $725.00 to be paid up to the anniversary of the date of judgment in year 2022, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j. For future unreimbursable Wheelchair Cushion and Adaptive Device expenses, beginning on the first anniversary of the date of judgment, an annual amount of $415.00 to be paid for the remainder of A.O.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l. For future unreimbursable Shower Chair, Commode Chair, Trapeze Bar, and Independent Transfer Support expenses, on the anniversary of the date of judgment in year 2021, a lump sum of $185.00. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $701.00. Then, on the anniversary of the date of judgment in year 2033, a lump sum of $185.00. Then, on the anniversary of the date of judgment in year 2039, a lump sum of $185.00. Then, on the anniversary of the date of judgment in year 2045, a lump sum of $185.00. Then, on the anniversary of the date of judgment in year 2051, a lump sum of $185.00. Thereafter, beginning on the anniversary of the date of judgment in year 2052, an annual amount of $93.33 to be paid for the remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

m. For future unreimbursable Patient Transfer System, Lift Inspection, Lift Batteries, and Lift Sling expenses, on the anniversary of the date of judgment in year 2052, a lump sum of $12,334.50. Thereafter, beginning on the anniversary of the date of judgment in year 2053, an annual amount of $644.50 to be paid for the remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

n. For future unreimbursable Mattress Overlay expenses, on the anniversary of the date of judgment in year 2037, a lump sum of $350.00. Thereafter, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $70.00 to be paid for the

remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

o. For future unreimbursable Over Bed Table expenses, on the anniversary of the date of judgment in year 2037, a lump sum of $83.00. Then, on the anniversary of the date of judgment in year 2057, a lump sum of $83.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

p. For future unreimbursable Scooter expenses, on the anniversary of the date of judgment in year 2020, a lump sum of $1,750.00. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $1,750.00. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $1,750.00. Then, on the anniversary of the date of judgment in year 2035, a lump sum of $1,750.00. Then, on the anniversary of the date of judgment in year 2040, a lump sum of $1,750.00. Thereafter, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $350.00 to be paid for the remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

q. For future unreimbursable Scooter Maintenance expenses, beginning on the anniversary of the date of judgment in year 2020, an annual amount of $375.00 to be paid for the remainder of A.O.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

r. For future unreimbursable Attendant Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $13,140.00 to be paid up to the anniversary of the date of judgment in year 2020. Then, beginning on the anniversary of the date of judgment in year 2020, an annual amount of $26,280.00 to be paid up to the anniversary of the date of judgment in year 2027. Then, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $32,850.00 to be paid up to the anniversary of judgment in year 2037. Then, beginning on the anniversary of the date of judgment on 2037, an annual amount of $52,560.00 to be paid up to the anniversary of judgment in year 2052. Thereafter, beginning on the anniversary of the date of judgment in year 2052, an annual amount of $73,183.00 to be paid for the remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

s. For future unreimbursable Ancillary Service expenses, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $1,950.00 to be paid for the remainder of A.O.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

t. For future unreimbursable Home Modification expenses, on the anniversary of the date of judgment in year 2027, a lump sum of $70,465.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

u. For future unreimbursable Modified Van expenses, on the anniversary of the date of judgment in year 2025, a lump sum of $36,120.75. Then, on the anniversary of the date of judgment in year 2035, a lump sum of $36,120.75. Thereafter, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $3,612.08 to be paid for the remainder of A.O.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

v. For future unreimbursable Modified Van Maintenance expenses, beginning on the first anniversary of the date of judgment, an annual amount of $180.00 to be paid for the remainder of A.O.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioner in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioner and do not require that the payment be made in one annual installment. The petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as A.O. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of A.O.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioner has filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioner and her attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, the money provided pursuant to this Stipulation will be used solely for the benefit of A.O. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of A.O.'s estate under the laws of the State of Georgia. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian(s)/conservator(s) of A.O.'s estate. If petitioner is not authorized by a court of

competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.O. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.O. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in her individual capacity and as legal representative of A.O., on behalf of herself, A.O., and her heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of A.O. resulting from, or alleged to have resulted from, the flu vaccination administered on January 11, 2012, as alleged by petitioner in a petition for vaccine compensation filed on or about October 25, 2013, in the United States Court of Federal Claims as petition No. 13-835V.

18. If A.O. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a

decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioner hereby authorizes respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the Flu vaccine caused A.O. to suffer GBS or any other injury or condition.

23. All rights and obligations of petitioner hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of A.O..

END OF STIPULATION

Respectfully submitted,

PETITIONER:

*[signature]*

DEMETRICE BELL-O'NEAL

ATTORNEY OF RECORD FOR
PETITIONERS:

*[signature]*

DIANA L. STADELNIKAS SEDAR, ESQ.
MAGLIO CHRISTOPHER & TOALE, PA
1605 Main Street, Suite 710
Sarasota, FL 34236
1455 Pennsylvania Ave., NW, Suite 400
Washington, DC 20004
Tel: (888) 952-5242

AUTHORIZED REPRSENTATIVE
OF THE ATTORNEY GENERAL:

*[signature]*

VINCENT J. MATANOSKI
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

*[signature]*

A. MELISSA HOUSTON M.D., M.P.H., FAAP
Director, Division of Injury Compensation
Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

Dated: 11-20-15

ATTORNEY OF RECORD FOR
RESPONDENT:

*[signature]*

CLAUDIA B. GANGI
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4138

12